UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------------X

THOMAS MCCOY,                                  :
                                               :
                    Plaintiff,                 :
                                               :       **DECISION AND ORDER**
        -against-                              :       13-CV-1500 (WFK)
                                               :
COMMISSIONER OF SOCIAL SECURITY,               :
                                               :
                    Defendant.                 :
--------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**

This is a review of a denial of Supplemental Security Income ("SSI") by the Commissioner of Social Security ("Commissioner"). Plaintiff Thomas McCoy ("Plaintiff") commenced this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner which denied his application for SSI. Before the Court are motions for judgment on the pleadings from each party. For the reasons set forth below, the Commissioner's motion is GRANTED IN PART and DENIED IN PART and Plaintiff's cross-motion is GRANTED IN PART and DENIED IN PART. The case is REMANDED for further review consistent with this opinion.

## FACTUAL AND PROCEDURAL HISTORY

Plaintiff is a forty-two year old African-American male and United States citizen who was born on August 16, 1972. Dkt. 21 ("R.") at 118235. He is 5' 11" and weighed two hundred and thirty pounds in 2011. *Id.* at 158. Plaintiff graduated from high school in 1990 and has received vocational training at various points in his life, but did not pursue any other higher education opportunities. *Id.* at 159, 235. Plaintiff also spent time incarcerated and was homeless as of October 26, 2011. *Id.* at 119, 248, 294, 364-65. Plaintiff was last employed in 2008, and he has worked at various times during his adult life as a security guard, a delivery boy, a stock boy, a mechanic, and doing asbestos removal. *Id.* at 148, 200, 235.

Plaintiff claims to suffer from a long list of conditions, including depression, anxiety, schizophrenia, bipolar disorder, "learning and concentration problems," "[being] overweight,"

asthma, migraine, lower back pain, pain in right shoulder, pain in left knee, pain in right hand, lumbar spine pain, juxta-articular osteoporosis, and right pinky knuckle pain. *Id.* at 158; *see also id.* at 304-07, 321-22, 345, 363. The list of his severe impairments (according to his attorney before the Appeals Council) includes lumbago, lumbar sprain, left knee (tibial tuberosity), lower back pain, major depressive disorder with psychotic features, untreated chronic mood disorder, bipolar disorder, panic disorder with agoraphobia, paranoia, and claustrophobia, and schizoaffective disorder. *Id.* at 235-36. Plaintiff also reports having trouble sleeping. *Id.* at 173, 183, 425. In order to manage his pain, Plaintiff has been prescribed bilateral lumbar facet injections which he reports provide relief for two days. *Id.* at 236, 335, 337. Further, Plaintiff has been prescribed a laundry list of medications for his conditions, including but not limited to acetaminophen with codeine, Maxalt MLT, and facet joint injections for the pain, and Ventolin HFA and steroids for his asthma. *Id.* at 191-94; *see also id.* at 339 (list of ten medications being taken by Plaintiff as of September 2011), 360-61 (list of eight medications being taken by Plaintiff as of October 26, 2011), 472-82 (list of ten medications being taken by Plaintiff in 2012, along with prescription information). Plaintiff also takes medications for his psychological conditions, including Haldol, Zyprexa, and Atarax. *Id.* at 196, 236.

On September 26, 2011, Plaintiff applied for SSI. *Id.* at 237. On December 5, 2011, Plaintiff's application was denied. *Id.* at 54. As a result of the denial, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). *Id.* at 58-60. Plaintiff had a hearing on his SSI application in front of ALJ Gitel Reich ("the ALJ") on August 9, 2012. *Id.* at 25-47. Plaintiff was represented by counsel. *Id.* at 25. He received an Unfavorable Notice of Decision on October 11, 2012. *Id.* at 239. Plaintiff appealed that decision. *Id.* at 239-42. The Appeals Council denied his request for review on January 15, 2013. *Id.* at 1-3.

On March 21, 2013, Plaintiff filed a complaint against the Commissioner pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision by the Commissioner which denied his application for SSI. Dkt 1 ("Compl"). The Commissioner filed a motion for judgment on the pleadings on August 19, 2013. Dkt. 16 ("C's Memo"). Plaintiff cross-moved for judgment on the pleadings on October 9, 2013. Dkt. 18 ("P's Memo").

The Commissioner argues the Court should affirm the ALJ's determination that Plaintiff was not disabled because the ALJ properly evaluated the evidence and applied the correct legal standards to the facts. C's Memo at 21-32. Plaintiff, on the other hand, argues that the Court should reverse the ALJ's decision, or at least remand it, because the ALJ: (1) violated the treating physician rule by failing to give controlling weight to the opinion of Dr. Nidhiry; (2) failed to make findings regarding Plaintiff's substance abuse; (3) failed to make findings regarding Plaintiff's mental residual functional capacity; (4) made a finding of physical residual functional capacity that was not supported by substantial evidence in the record; (5) should have used a vocational expert; and (6) ignored the opinion of the agency consultant. P's Memo at 7-25; Dkt. 20 ("P's Reply").

The Court will address each of the six issues raised by Plaintiff in his motion in turn.

## DISCUSSION

### I.    Legal Standards

#### A.  Standard of Review

When a claimant challenges the Social Security Administration's ("SSA") denial of disability benefits, the Court's function is not to evaluate *de novo* whether the claimant is disabled, but rather to determine only "whether the correct legal standards were applied and

whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004), *amended on reh'g*, 416 F.3d 101 (2d Cir. 2005) (internal citation omitted); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . ."); *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). Substantial evidence is "more than a mere scintilla"; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks omitted) (quoting *Consol. Edison Co. of N.Y., Inc. v. NLRB*, 305 U.S. 197, 229 (1938)); *Moran,* 569 F.3d at 112. The substantial evidence test applies not only to the Commissioner's factual findings, but also to inferences and conclusions of law to be drawn from those facts. *See Carballo ex rel. Cortes v. Apfel*, 34 F. Supp. 2d 208, 214 (S.D.N.Y. 1999) (Sweet, J.). In determining whether the record contains substantial evidence to support a denial of benefits, the reviewing court must examine the entire record, weighing the evidence on both sides to ensure that the claim "has been fairly evaluated." *See Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (internal quotation marks omitted) (citing *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983)).

It is the function of the SSA, not of the federal district court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983) (citing *Richardson*, 402 U.S. at 399); *see also Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998). Although the ALJ need not resolve every conflict in the record, "the crucial factors in any determination must be set forth with sufficient specificity to enable [the reviewing court] to decide whether the determination is supported by substantial evidence." *Calzada v. Asture*, 753 F. Supp. 2d 250,

268-269 (S.D.N.Y. 2010) (Sullivan, J.) (internal quotation marks omitted) (citing *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984)).

To fulfill this burden, the ALJ must "adequately explain [her] reasoning in making the findings on which [her] ultimate decision rests" and must "address all pertinent evidence." *Kane v. Astrue*, 942 F. Supp. 2d 301, 305 (E.D.N.Y. 2013) (Kuntz, J.) (quoting *Calzada*, 753 F. Supp. 2d at 269). "[A]n ALJ's failure to acknowledge relevant evidence or to explain its implicit rejection is plain error." *Id.* (internal quotation marks and citations omitted). Remand is warranted when "there are gaps in the administrative record or the ALJ has applied an improper legal standard." *Rosa v. Callahan*, 168 F.3d 72, 83 (2d Cir. 1999).

### B. Statutory and Regulatory Standards

To qualify for SSI, the Social Security Act requires the claimant to prove he has a disability. *See* 42 U.S.C. §1382c. "Disability" is defined in the Social Security Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §1382c(a)(3)(A).

The Commissioner must evaluate whether an individual qualifies as disabled using a five step process promulgated by the Social Security Administration ("SSA"):

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience. . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is

unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

*Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 111-12 (2d Cir. 2010) (brackets and ellipses in original) (citations omitted); *see also* 20 C.F.R. §416.920. The claimant bears the burden of proof at steps one through four in the analysis. *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013) (per curiam) (citations omitted). At step five, the burden shifts to the Commissioner to prove that there are jobs in the national economy that the claimant could perform even with his disability or disabilities. *Salmini*, 371 F. App'x at 112 (citation omitted); *see also Selian*, 708 F.3d at 418.

### C. The ALJ's Decision

On October 11, 2012, the ALJ denied Plaintiff's application for SSI. R. at 10-19. Although Plaintiff claimed he had been disabled since April 1, 2008, the ALJ only considered whether Plaintiff had been disabled since September 26, 2011, the date on which he initially filed his application for SSI. *Id.* at 10.

Applying the five step process promulgated by the SSA, the ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since September 26, 2011. *Id.* at 12. At step two, the ALJ determined that Plaintiff had the following severe impairments: "degenerative disc disease of the lumbar and lumbosacral spines with evidence of herniations and impingement but no reticular component; a history of asthma; a major depressive disorder; and[] a history of alcohol and substance abuse." *Id.*

At step three, however, the ALJ determined that these impairments "neither meet nor equal the severity of any listed impairment." *Id.* at 12-15. The ALJ found that Plaintiff's testimony was incredible as he "testified that he last used marijuana and cocaine in 2006 . . . [but] the evidence of record contains numerous references to [Plaintiff] using marijuana and

cocaine" more recently, including a diagnosis of drug and alcohol dependence by Plaintiff's treating physician, Dr. Nidhiry, in September and December 2011. *Id.* at 13; *see also id.* at 290-94. Further, the ALJ noted "there appears to be a significant discrepancy concerning [Plaintiff's] candidness regarding . . . statements concerning the severity of [Plaintiff's] condition based on whether the reason for the examination is to support a claim for disability or a rehabilitation training program." *Id.* Similarly, the ALJ stated "[o]pinions regarding [Plaintiff's] ability to work . . . run the gamut from no limitations to marked limitations seemingly without explanation or documentation." *Id.* The ALJ ultimately decided not to give controlling weight to Plaintiff's treating physician's opinions or the opinions of certain other doctors because the ALJ found "the change in assessments is based on [Plaintiff's] decision to file for disability benefits in September 2011 rather than [to] pursue vocational rehabilitation." *Id.* at 14-15. Specifically, the ALJ observed the changes "cannot be explained by any deterioration in [Plaintiff's] condition which occurred in a period of about one month." *Id.* at 15.

At step four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work "except for only occasional overhead reaching with the hands[] and[] a limitation to simple work that has only occasional contact with people." *Id.* While the ALJ found that there was evidence of "significant impairment of [Plaintiff's] lumbar and lumbosacral spines," the medical studies performed on Plaintiff failed to "support evidence of a significant radicular component" and further Plaintiff failed to continue to undergo injections that reduced the pain associated with these impairments. *Id.* at 16-17. The ALJ therefore found that Plaintiff could perform light work. *Id.* at 17. The ALJ included the overhead reaching and occasional contact limitations due to Plaintiff's "recent history of shoulder problems" and his

psychological impairments, respectively. *Id.* Based on this evaluation, the ALJ determined that the Plaintiff could not perform any past relevant work. *Id.*

Lastly, at step five, the ALJ considered the Plaintiff's age, education, and work experience in conjunction with the Medical Vocational Guidelines to determine that Plaintiff could perform light work and therefore was not disabled. *Id.* at 18. The ALJ thus determined that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." *Id.* at 18-19.

## II.     Analysis

Plaintiff argues that the ALJ made the following errors in denying Plaintiff's application for SSI: (1) the ALJ violated the treating physician rule by failing to give controlling weight to the opinion of Dr. Nidhiry; (2) the ALJ failed to make findings regarding Plaintiff's substance abuse; (3) the ALJ failed to make findings regarding Plaintiff's mental residual functional capacity; (4) the ALJ made a finding of physical residual functional capacity that was not supported by substantial evidence in the record; (5) the ALJ should have used a vocational expert; and (6) the ALJ ignored the opinion of the agency consultant. P's Memo at 7-25; P's Reply. The Court will now address each of the six issues raised by Plaintiff in turn.

### A. Challenge to Weight Given to Dr. Nidhiry's Conclusions by ALJ

Plaintiff first challenges the denial of SSI benefits on the basis that the ALJ violated the treating physician rule by failing to give controlling weight to the conclusions of his treating physician, Dr. Nidhiry. P's Memo at 7-13.

"The SSA recognizes a treating physician rule of deference to the views of the physician who had engaged in the primary treatment of the claimant." *Green-Younger v. Barnhart*, 335

F.3d 99, 106 (2d Cir. 2003). "The opinion of a treating physician on the nature or severity of a claimant's impairments is binding if it is supported by medical evidence and not contradicted by substantial evidence in the record." *Selian*, 708 F.3d at 418 (citing *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008); *Green-Younger*, 335 F.3d at 106-07); *see also* 20 C.F.R. §404.1527(c)(2) (The opinions of a treating source will only be given controlling weight by the reviewing ALJ if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in [the] case record."); *Burgess*, 537 F.3d at 128 (citing *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)) ("[T]he opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with . . . the opinions of other medical experts.") (ellipses in original).

"In order to override the opinion of the treating physician, [the Second Circuit has] held that the ALJ must explicitly consider, *inter alia*: (1) the frequen[c]y, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Selian*, 708 F.3d at 418 (citing *Burgess*, 537 F.3d at 129); *see also* 20 C.F.R. §404.1527(c)(2) (setting out the factors for the ALJ to consider in determining how much weight a treating physician's opinion should receive: the "length of treatment relationship and the frequency of examination," "[n]ature and extent of the treatment relationship," "[s]upportability," [c]onsistency . . . with the record as a whole," "[s]pecialization," and "any factors [the claimant] or others bring to [the ALJ's] attention, or of which [the ALJ is] aware, which tend to support or contradict the opinion"). Further, "ALJs should not rely heavily on the findings of consultative physicians after a single examination." *Selian*, 708 F.3d at 419.

Failure on the part of the ALJ to provide "good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand." *Burgess*, 537 F.3d at 129-30 (quotation marks omitted) (citing *Snell*, 177 F.3d at 133); *see also Halloran*, 362 F.3d at 33 ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physicians opinion and we will continue remanding when we encounter opinions from ALJs that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion.").

Plaintiff challenges the ALJ's failure to give controlling weight to Dr. Nidhiry's opinion. P's Memo at 7-13. Plaintiff argues that Dr. Nidhiry's opinion was well supported by the medical evidence and was not inconsistent with the other substantial evidence of record. *Id.* at 8; *see also Selian*, 708 F.3d at 418 (citations omitted); 20 C.F.R. §404.1527(c)(2). Dr. Nidhiry's opinion, therefore, was entitled to be given controlling weight under the treating physician rule according to Plaintiff. P's Memo at 9. Plaintiff challenges the ALJ's decision on two bases: (1) ALJ Reich did not give good reasons for declining to give any weight to Dr. Nidhiry's opinion and (2) the ALJ failed to develop the record. *Id.* at 9-10.

Both parties agree that Dr. Nidhiry was Plaintiff's treating physician. P's Memo at 7; C's Memo at 25. Under the treating physician rule, as explained above, "[t]he opinion of a treating physician on the nature or severity of a claimant's impairments is binding if it is supported by medical evidence and not contradicted by substantial evidence in the record." *Selian*, 708 F.3d at 418 (citations omitted).

Dr. Nidhiry, a psychiatrist, treated Plaintiff between April 2010 and June 2012. R. at 457. As recently as August 2011, Dr. Nidhiry indicated that Plaintiff had "no functional limitations" as a result of his psychiatric issues. *Id.* at 432. At a visit one month later in

September 2011, Dr. Nidhiry's treatment notes indicate Plaintiff was "appropriately dressed and groomed," "relate[d] well," had "adequate impulse control, . . . normal speech pattern, normal voice tone, good eye contact, . . . no perception distortion, [and] good judgment." *Id.* at 443. Dr. Nidhiry also noted that Plaintiff was attending his scheduled appointments and was taking his prescription medication. *Id.* Dr. Nidhiry nonetheless concluded that Plaintiff's condition had not stabilized, ordered treatment to resume, and indicated that Plaintiff was "temporarily unemployable" for three to six months. *Id.* at 444. Similarly, in notes from a December 2011 visit, Dr. Nidhiry indicated that Plaintiff was attending scheduled appointments, was taking his prescribed medications, and was compliant with other types of treatment. *Id.* at 396. In terms of mood, however, Dr. Nidhiry found Plaintiff was "paranoid, anxious, [and] depressed." *Id.* Dr. Nidhiry ultimately determined that Plaintiff would be "unable to work for at least [twelve] months." *Id.* at 397.

Most recently, at a June 2012 visit, Dr. Nidhiry noted that Plaintiff was "appropriately dressed and groomed, cooperative, alert, oriented x3. Mood is anxious, depressed." *Id.* at 457. Dr. Nidhiry went on to find that Plaintiff's impairment could be expected to last at least twelve months, that there were both moderate and marked limitations on Plaintiff's daily living activities, and that Plaintiff had marked difficulties in maintaining social functioning and frequently experienced deficits in concentration, persistence, or pace. *Id.* at 460. Dr. Nidhiry further determined that Plaintiff would have marked limitations in understanding, remembering, and carrying our instructions, in responding appropriately to co-workers, in responding to customer work pressures, and in performing complex tasks and simple tasks in a work setting. *Id.* at 461.

The ALJ decided not to give controlling weight to Dr. Nidhiry's opinions because the ALJ found "the change in assessments is based on [Plaintiff's] decision to file for disability benefits in September 2011 rather than [to] pursue vocational rehabilitation." R. at 14-15. As the ALJ explained, "[o]pinions regarding [Plaintiff's] ability to work, including those from Dr. Nidhiry, also run the gamut from no limitations to marked limitations seemingly without explanation or documentation." *Id.* at 13. ALJ Reich went on to discuss in depth Dr. Nidhiry's reports from August 2011, September 2011, December 2011, and June 2012. *Id.* at 13-14. The ALJ noted in particular, in regards to the June 2012 report, "[Dr. Nidhiry's assessment] does not support the conclusion that [Plaintiff] suffered mostly marked limitations on his ability to perform work-related functions." *Id.* at 14. The ALJ explained further:

> In assessing the opinions of Dr. Nidhiry, I must note that no explanation is given for any deterioration [of Plaintiff's] condition which occurred sometime after August 2011. . . . I find, based on the credible evidence, that the change in assessments is based on [Plaintiff's] decision to file for disability benefits in September 2011 rather than pursue vocational rehabilitation. . . . The change in [Plaintiff's] psychological exam especially as it involved his ability to attend and communicate and whether he suffered any hallucinations cannot be explained by any deterioration [in Plaintiff's] condition which occurred in a period of about one month. . . . Rather, I find based on the clinical findings noted by [Dr. Nidhiry], that [Plaintiff] suffers a mild impairment on activities of daily living; a moderate impairment of social functioning; moderate impairment on his ability to maintain concentration, persistence, or pace; and[] no episodes of decompensation consistent with the Social Security regulations.

*Id.* at 14-15.

The ALJ discussed most of the factors outlined by the Second Circuit to satisfy its requirement that an ALJ give "good reasons" for not giving controlling weight to a treating physician's opinion. *See Selian*, 708 F.3d at 418 (citing *Burgess*, 537 F.3d at 129); *see also* 20 C.F.R. §404.1527(c)(2). For example, the ALJ discussed extensively the nature of the treatment relationship between Plaintiff and Dr. Nidhiry, as well as the

length and frequency of contact between the two. *Id.* at 14. The ALJ also detailed her concerns regarding the consistency of Dr. Nidhiry's opinions over time and in relation to other physicians' findings. *Id.*

The Court therefore finds that the ALJ did satisfy the Second Circuit's "good reasons" requirement. Plaintiff's motion on this ground is DENIED and the Commissioner's motion on this ground is GRANTED.

A determination that the ALJ provided good reasons to discount the treating physician's testimony, however, is not the end of the Court's inquiry on this issue. Even if the ALJ provides good reasons for discrediting the opinion of the treating physician, remand is nonetheless appropriate where there are gaps in the administrative record. *See Rosa*, 168 F.3d at 83. Here, the ALJ discussed at length the inconsistencies among Dr. Nidhiry's four reports. R. at 13-15. The ALJ independently determined that this was due to "[Plaintiff's] decision to file for disability benefits in September 2011 rather than pursue vocational rehabilitation." *Id.* The ALJ did not ask for further information from Dr. Nidhiry to explain why his opinion changed between August 2011 and September 2011, or to explain any of his other findings and conclusions. This was error. The ALJ should have taken steps directing Plaintiff or Plaintiff's counsel to ask Dr. Nidhiry to supplement his findings and opinions with additional information. *See Rosa*, 168 F.3d at 80 ("Confronted with this situation, the ALJ should have taken steps directing [Plaintiff] to ask [Doctor] to supplement his findings with additional information. It is entirely possible that [Doctor,] if asked, could have provided a sufficient explanation for any seeming lack of support for his ultimate diagnosis . . . As this Court recognized [], a treating physician's failure to include this type of support for the findings in his report

does not mean that such support does not exist; he might not have provided this information in the report because he did not know that the ALJ would consider it critical to the disposition of the case.") (internal citations, quotations, and brackets).

Accordingly, the case must be REMANDED to fill the gaps in the administrative record and for further consideration of Dr. Nidhiry's opinions in light of this Court's analysis.

### B. Challenge to ALJ's Findings Regarding Substance Abuse

Plaintiff next challenges the denial of SSI benefits on the basis that the ALJ failed to make the requisite finding of whether Plaintiff's substance abuse was ongoing and material at the second step of the SSA evaluation procedure. P's Memo at 15. Plaintiff explains the ALJ only found a history of alcohol and substance abuse, but did not determine whether the abuse was ongoing or whether it had an effect on Plaintiff's mental residual functional capacity. *Id.*; *see also* R. at 13. Further, the ALJ noted that two physicians had diagnosed Plaintiff with drug dependence. R. at 13-15. Plaintiff therefore argues that failure by the ALJ to list alcohol or substance abuse as a severe impairment constituted legal error. P's Reply at 1.

Substance abuse can constitute a severe impairment cognizable under the second step of the SAA evaluation procedure. *See Smith v. Colvin*, 11-CV-4802, 2013 WL 6504789, at *7 (E.D.N.Y. Dec. 11, 2013) (Garaufis, J.) (noting ALJ's finding that plaintiff had the severe impairment of substance abuse). An ALJ commits error by failing to meaningfully consider a plaintiff's diagnosis of alcohol or drug abuse. *See Hernandez v. Astrue*, 814 F. Supp. 2d 168, 185 (E.D.N.Y. 2011) (Matsumoto, J.). The "failure to consider the effects of [P]laintiff's combined impairments in every step of the five-step sequential process [] requires remand." *Id.* (internal citation omitted).

14

Dr. Nidhiry and the physician at Arbor We Care both diagnosed Plaintiff with drug dependence of various forms. R. at 13. Given the ALJ's recognition that Plaintiff had been diagnosed with drug dependency, the ALJ committed error in neglecting to account for Plaintiff's drug dependency in her evaluation of Plaintiff's severe impairments at step two. *Hernandez*, 814 F. Supp. 2d at 185. The Court therefore REMANDS the issue of Plaintiff's current substance abuse and its possible effect on his SSI application for determination by the ALJ in the first instance.

### C. Challenge to ALJ's Findings Regarding Work-Related Mental RFC

Plaintiff also challenges the denial of SSI benefits on the basis that the ALJ failed to make the requisite finding of Plaintiff has "workplace mental functioning" at the second step of the SSA evaluation procedure. P's Memo at 15-19. Specifically, Plaintiff argues that, although the ALJ found Plaintiff had certain impairments, the ALJ failed "to make the requisite further analysis of how these impairments affected basic work-related mental activities." P's Reply at 2.

After evaluating the medical evidence, the ALJ found that Plaintiff "suffers a mild impairment on activities of daily living; a moderate impairment of social functioning; moderate impairment on his ability to maintain concentration, persistence, or pace; and[] no episodes of decompensation consistent with the Social Security regulations." R. at 14-15. The ALJ therefore determined that Plaintiff was limited to simple work, meaning "jobs that can be performed after a short demonstration or within 30 days, and do not require special skills or experience." R. at 18.

Plaintiff notes that other courts have found unskilled work "insufficient to account for difficulties in concentration, persistence[,] or pace." P's Reply at 3 (citing *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176 (11th Cir. 2011)). The Second Circuit, however, has suggested that there are at least certain types of unskilled work that an individual with limitations in

concentration, persistence, and pace would be able to perform. *McIntyre v. Colvin*, 758 F.3d 146, 152 (2d Cir. 2014) (noting there are situations in which "medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace[.]") (internal quotation marks and citation omitted). Therefore, the question of whether Plaintiff can perform simple or unskilled work given his limitations is a question for the ALJ to determine on the basis of substantial evidence and the Second Circuit's standard, rather than a matter of applying a clear legal rule. *See Butts*, 388 F.3d at 384 (The Court reviews ALJ determinations only on the bases of "whether the correct legal standards were applied and whether substantial evidence supports the decision.").

Again, given the Court's determination that the ALJ's treatment of Dr. Nidhiry's opinions requires remand, the Court will also REMAND the issue of Plaintiff's work-related mental RFC for further clarification by the ALJ in the first instance, as the ALJ's findings on the issue were based at least in part on Dr. Nidhiry's testimony.

### D. Challenge to ALJ's Determination of Physical RFC

Plaintiff next challenges that ALJ's determination of Plaintiff's physical RFC on the basis that it was not supported by substantial evidence in the record. P's Memo at 19-23; P's Reply at 5-7.

As noted above, when a claimant challenges the SSA's denial of disability benefits, the Court's function is to determine only "whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts*, 388 F.3d at 384. Although the ALJ need not resolve every conflict in the record, "the crucial factors in any determination must be set forth with sufficient specificity to enable [the reviewing court] to decide whether the determination is supported by substantial evidence." *Calzada*, 753 F. Supp. 2d at 268-269

16

(internal quotation marks and citation omitted). Substantial evidence is "more than a mere scintilla"; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (citation omitted); *Moran*, 569 F.3d at 112. The substantial evidence test applies not only to the Commissioner's factual findings, but also to inferences and conclusions of law to be drawn from those facts. *See Carballo ex rel. Cortes*, 34 F. Supp. 2d at 214. In determining whether the record contains substantial evidence to support a denial of benefits, the reviewing court must examine the entire record, weighing the evidence on both sides to ensure that the claim "has been fairly evaluated." *See Brown*, 174 F.3d at 62 (2d Cir. 1999) (citation omitted). In addition, the ALJ commits legal error by "mak[ing] an RFC determination in the absence of supporting expert medical opinion [because the ALJ] has improperly substituted his [or her] own opinion for that of a physician." *Mancuso v. Comm'r of Soc. Sec.*, No. 14-CV-114, 2015 WL 1469664, at *24 (E.D.N.Y. Mar. 30, 2015) (Brodie, J.) (internal quotation marks and citation omitted). Additionally, "[a]n ALJ's failure to reconcile such materially divergent [residual functional capacity ("RFC")] opinions of medical sources is [] a ground for remand. *Marchetti v. Colvin*, 13-CV-2581, 2014 WL 7359158, at *14 (E.D.N.Y. Dec. 24, 2014) (Matsumoto, J.) (internal quotation marks and citation omitted). "This is especially true where the ALJ discounts the opinion of the treating physician." *Id.* (citing *Kennedy v. Astrue*, 343 F. App'x 719, 721 (2d Cir. 2009)).

Plaintiff argues the ALJ's decision that Plaintiff can perform the full range of light work is not supported by substantial evidence because the ALJ substituted her opinion for that of a physician. P's Memo at 19; P's Reply at 7. Specifically, Plaintiff argues that the reports on which the ALJ relied are inadequate because they do not address Plaintiff's physical limitations in pushing, pulling, sitting, standing, walking, lifting, or carrying. P's Memo at 20-22; P's Reply

at 7-8. Plaintiff also argues that the ALJ ignored evidence from Dr. Kolesnik, who found that Plaintiff had "mild impingement upon the L5 nerve roots" and a "disc bulge and right foraminal herniation with moderate right foraminal impingement" at the L5-S1 disc after an MRI. P's Memo at 22; R. at 322. Dr. Kolesnik, however, also found that Plaintiff had a 5/5 motor exam, normal muscle bulk and normal muscle tone, and a normal and steady gait. R. at 316-17.

The ALJ determined Plaintiff "has retained the residual functional capacity to perform a full range of light work with lifting and carrying up to [twenty] pounds occasionally, and [ten] pounds frequently; standing and/ or walking up to six hours in an eight hour day; and sitting and working up to six hours in an eight hour day." R. at 17. The ALJ based these findings on "evidence of a significant impairment of [Plaintiff's] lumbar and lumbosacral spines," but noted "EMG and nerve condition studies failed to support evidence of a significant radicular component." *Id.* at 16. The ALJ credited Dr. Graber's findings that failed to document any significant musculoskeletal impairments beyond "mild limitation for bending, squatting and other such activities" in October 2011, but discredited Dr. Glusker's findings from 2012 that were based on Plaintiff's reporting, as the ALJ determined that Plaintiff's testimony and reporting was incredible. *Id.* at 16-17; *see also id.* at 363. The ALJ did not mention Dr. Kolesnik's report.

The Court finds that the ALJ's determination is not supported by substantial evidence. The ALJ erred first by failing to discuss Plaintiff's condition with respect to all of the types of movement relevant to light work. Dr. Graber's statement that Plaintiff only had a "mild limitation for bending, squatting and other such activities" was "too vague a statement to serve as an adequate basis for determining Plaintiff's RFC" with regards to pushing, pulling, or the other movement types. *Mancuso*, 2015 WL 1469664 at *25 (internal quotation marks, brackets, and

citation omitted). The ALJ also erred by failing to discuss Dr. Kolesnik's report and the MRI findings in her decision. *See* 20 C.F.R. § 416.927(c) ("[W]e will evaluate every medical opinion we receive."); *Mancuso*, 2015 WL 1469664 at \*24 ("The ALJ was required to evaluate and weigh the medical findings of non-treating physicians.") (citation omitted). This failure to discuss the only medical opinion which found Plaintiff suffered some physical back trauma further undermines a finding that her decision was supported by substantial evidence since this is a piece of evidence that casts doubt on her determination. Therefore, the Court REMANDS the issue of Plaintiff's physical RFC for further exploration and explanation by the ALJ.

### E. Challenge to ALJ's Decision Not to Use a Vocational Expert

Plaintiff also argues that the ALJ should have used a Vocational Expert ("VE") when determining whether Plaintiff had the ability to engage in work that existed in significant numbers in the national economy at step five of the SSA analysis. P's Memo at 13-15. Specifically, Plaintiff alleges that because the ALJ determined that Plaintiff had a limitation of "only occasional overhead work," the ALJ was required to use a VE. *Id.* at 13.

When a SSI applicant has a non-exertional limitation, the ALJ must determine whether that limitation is non-negligible before the ALJ can determine the applicant's RFC. *Selian*, 708 F.3d at 412, 421. "A non[-]exertional impairment is non-negligible when it so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." *Id.* at 421 (internal quotation marks and ellipses omitted) (citing *Zabala v. Astrue*, 595 F.3d 402, 411 (2d Cir. 2010)). If the limitation is non-negligible, then the ALJ may not rely on the Medical-Vocational Guidelines and must use the testimony of a VE. *Id.* (citing *Zabala*, 595 F.3d at 411).

Here, the ALJ did not "affirmatively determine whether or not [Plaintiff's] limitation was negligible, despite finding that [Plaintiff] could reach only 'occasionally.'" *Id.* at 422. A finding that a non-exertional limitation occurs occasionally is not the same as determining whether it is negligible or non-negligible. *See id.* "Occasionally is defined in the Medical-Vocational Rules as anywhere from very little up to one-third of the time. Where on this spectrum [Plaintiff] falls is unclear from the record." *Id.* (internal quotation marks and citations omitted). It was error for the ALJ to fail to determine whether Plaintiff's overhead work limitation was negligible or non-negligible. Further, without an initial determination that the limitation was non-negligible, it was error for the ALJ to make a determination at step five without the testimony of a VE.

The Court therefore REMANDS this issue to the ALJ for further determination of whether Plaintiff's limitation (or limitations) are negligible and, if they are non-negligible, to obtain the testimony of a VE to determine whether Plaintiff is nonetheless able to perform work existing in significant numbers in the national economy.

### F. Challenge to ALJ's Failure to Discuss Dr. Burstein's Report

Lastly, Plaintiff argues that the case should be remanded for the ALJ to evaluate and discuss the report of Dr. Burstein, a state agency psychiatrist. P's Memo at 24-25. The Commissioner argues that remand is unnecessary because, since the ALJ rejected the opinion of Dr. Miller upon which Dr. Burstein based his conclusions, it is evident that the ALJ did not give significant weight to Dr. Burstein's report. Dkt. 19 ("C's Reply") at 3.

If the Court were not remanding this case to the ALJ for further discussion already, this would be a closer call. *See* 20 C.F.R. § 416.927(c) ("[W]e will evaluate every medical opinion we receive."); *Mancuso*, 2015 WL 1469664 at *24. However, given the Court's determination to remand for further analysis of Dr. Nidhiry's psychiatric testimony, the Court sees no reason to

prevent the ALJ from also considering the psychiatric report of Dr. Burstein on remand. The Court therefore REMANDS this issue for further analysis by the ALJ in the first instance.

## CONCLUSION

For the reasons stated herein, Commissioner's motion for judgment on the pleadings is GRANTED IN PART and DENIED IN PART and Plaintiff's cross-motion for judgment on the pleadings is GRANTED IN PART and DENIED IN PART. This matter is hereby REMANDED to the Social Security Administration for further consideration consistent with this opinion.

**SO ORDERED.**

s/William F. Kuntz, II

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: April 10, 2015
Brooklyn, New York